I respectfully dissent.
Robert Hall began to work for Flint Construction Company in 1980. On December 30, 1990, he injured his left knee while working for Flint. Flint paid the medical expenses associated with the knee injury. Flint settled the workers' compensation claim relating to Hall's knee injury, and later it settled a claim relating to a reinjury of that knee.
In April 1997, Hall injured his back while attempting to pick up a concrete *Page 256 
form, and he filed a workers' compensation claim. Hall's doctor recommended that Hall have an MRI performed and that he have other treatment. Hall also consulted a chiropractor for the pain in his back. Hall testified that he had some difficulty getting the procedures approved under his workers' compensation insurance at Flint. Hall was absent from work for a number of days during this period, allegedly to attend doctors' visits and to receive treatments for his back.
On June 4, 1997, Hall received a letter from James Eaves, an executive at Flint, informing him that his employment had been terminated "[d]ue to current circumstances." Hall filed an application for unemployment-compensation benefits with the Georgia Department of Labor indicating that he had been discharged and that Flint had given no reason for the discharge. The Georgia Department of Labor sent a form to Flint asking for a reason for Hall's discharge. Flint responded that Hall had been terminated because of a lack of work.
In 1999, Hall sued Flint seeking workers' compensation benefits and alleging retaliatory discharge and fraud. The trial court severed Hall's workers' compensation claim from the fraud and retaliatory-discharge claims. Hall settled the workers' compensation claim with Flint. The retaliatory-discharge and fraud claims went to trial. At trial, Hall presented conflicting evidence as to whether Flint claimed that Hall had been discharged because of a lack of work, because of excessive absences, or because of his gambling.
Section 25-5-11.1, Ala. Code 1975, states, in relevant part:
 "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ."
At trial, Hall presented evidence indicating that he had encountered a negative attitude from Flint regarding his injuries. Notably, Hall recounted an incident in which an executive at Flint had called him into his office and told him that Hall's previous knee injuries had cost the company $68,000. Hall also presented evidence indicating that Flint's original stated reason for discharging Hall — that there was no work for him to do — was false. Finally, Hall presented evidence indicating that the decision-makers at Flint were aware of his workers' compensation claims before they discharged him.
As the main opinion notes, in order to prove a prima facie case of retaliatory discharge, a plaintiff must show:
 "1) an employment relationship, 2) an on-the-job injury, 3) knowledge on the part of the employer of the on-the-job injury, and 4)subsequent termination of employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim."
Alabama Power Co. v. Aldridge, 854 So.2d 554, 563 (Ala. 2002). In the case before us, there is no question that there was an employment relationship, that there was an on-the-job injury, and that Hall's employment was terminated. Hall presented substantial evidence indicating that the decision-makers who were responsible for discharging him were aware of Hall's on-the-job injuries. What is less clear is the sufficiency of Hall's evidence indicating that Hall's discharge was "based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim." Aldridge, 854 So.2d at 563.
Once the plaintiff in a retaliatory-discharge action proves his or her prima facie case of retaliatory discharge, then the employer must come forward with evidence of *Page 257 
a legitimate reason for the discharge. See Twilley v. DaubertCoated Prods., Inc., 536 So.2d 1364 (Ala. 1988). Only after the plaintiff has proven a prima facie case of retaliatory discharge and the employer has offered a legitimate reason for the discharge does the "`"[t]he plaintiff . . . [have] the burden of going forward with rebuttal evidence showing that the defendant's [stated] reasons"' for terminating the plaintiff are not true."Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1122 (Ala. 1992) (quoting Twilley, 536 So.2d at 1369, quoting in turnPushkin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981)). This Court has held that "an employee may establish a prima facie case of retaliatory discharge by proving that he was `terminated' because he sought to recover workers' compensation benefits, which would be an impermissible reason."Twilley, 536 So.2d at 1369. "`In order to establish a prima facie case of retaliatory discharge, the plaintiff must present substantial evidence that he was terminated solely for seeking workers' compensation benefits.'" G.UB.MK. Constructors v.Carson, 812 So.2d 1175, 1177 (Ala. 2001) (quoting Kent Corp. v.Hale, 699 So.2d 954, 958 (Ala. 1997)). "A plaintiff must prove a causal connection between the workers' compensation claim and the subsequent discharge in order to establish a prima facie case."Aldridge, 854 So.2d at 563.
The only real evidence indicating that Flint discharged Hall "based solely upon [Hall's] on-the-job injury and the filing of a workers' compensation claim," Aldridge, 854 So.2d at 563, is the evidence indicating that Flint's proffered reasons for discharging Hall were questionable and, therefore, pretextual. However, the main opinion is allowing the satisfaction of Hall's burden to respond to Flint's proffered legitimate reason for discharging Hall to satisfy Hall's initial obligation to show a causal connection between Hall's injury and workers' compensation claim and the termination of his employment. Hall did not offer substantial evidence indicating that there was such a causal connection. The evidence indicating that an executive at Flint had told Hall how much his knee injuries had cost the company may tend to show a negative attitude about Hall's injuries, but Hall did not offer evidence that tends to show that such a negative attitude about the cost of his knee injuries led Flint to terminate Hall's employment.[4] Nor has Hall offered other evidence beyond the speculation that, if Hall was not discharged for gambling and there were conflicting statements as to whether he was discharged because there was a lack of work for him or because he had missed more work than anyone else ever had, then,ipse dixit, Flint must have discharged him solely because he was injured and filed a claim.[5]
Because I believe that Hall did not offer substantial evidence indicating that he was discharged "solely because [he] ha[d] instituted or maintained [an] action against [Flint] to recover workers' compensation benefits. . . .," § 25-5-11.1, Ala. Code 1975, I respectfully dissent.
[4] In fact, the Flint executive who allegedly told Hall how much his knee injury had cost the company was not one of the decision-makers who decided to discharge Hall.
[5] If Hall had established a prima facie case of retaliatory discharge and Flint had offered in defense reasons for Hall's discharge, such evidence would be relevant to whether Flint's proffered reasons were pretextual. *Page 258